Judge Morrison

This is a letter of newly discovered evidents I've be trying to call my attorneys nither has answered my most recent calls between Mr Durkin & Mr Yeazel was on 5-12-25 times 9:43 AM, 9:45 AM, 9:46 AM, 12 PM, 12:03 PM, & 4:13 PM all was ignored I've wrote this issue to attorneys as well via letter & emails this issue was not answered I've begged both lawyers to seek a warrant that was never contained in my discovery, I told attorney's & CPD Harmon & government purposely hid a warrant that Harmon got using Judge Ogrady, on 1-28-25 Yeazel finally listened to me seeking out warrant & found it! This is the same warrant CPD Harmon under oath lied about during trial Harmon lied of this warrant on Q&A with Durkin & Ms Hill, see attached transcripts & warrant everyone knowingly knows of this lie I need 2 speak 2 my lawyers now — please help me Judge. Ricco Mayes 5-12-25

cc. Cheif Elaine Bryant
cc. FBI
cc Yeazel & Durkin

## Keith Yeazel

| | |
|---|---|
| From: | Kevin Durkin <kevindurkin50@gmail.com> |
| Sent: | Tuesday, January 21, 2025 3:18 PM |
| To: | Keith |
| Subject: | Maye |

Keith,

Mr. Maye is requesting documents related to the Search Warrant referred to below:

SUBJECT: Ricco Maye Cellphone analysis, from Whitehall SW
During this investigation, Central Ohio Human Traffic Task Force Agents became aware of a search warrant that was executed by Whitehall Police Department on Ricco Mayes residence in January of 2019. Out of Whitehall's search warrant, Task Force Agents found that several items were seized and submitted as evidence to the Whitehall Police Department property room. Central Ohio Human Trafficking Task Force Agents recovered those items from Whitehall and took custody of the devices. The devices were then transported to the Columbus Police Department property room. Task Force Agent Harmon requested a search warrant for the devices out of the Whitehall incident. The search warrant was granted by Franklin County Municipal Court Judge O'Grady on August 31, 2020.
Task Force Agents transported the devices to Ohio Department of Public Safety digital forensic unit for processing. A complete forensic report was completed and will be attached in its entirety upon request. Listed below, is a summary of the forensic report for the cell phone that was recovered.
Task Force Agents identified this device belonging to Ricco Maye, as his number was identified by multiple sources. It was also confirmed that he was the owner based on the conversations where they referred to Mr. Maye by name.
Extraction Summary
Make: Samsung
Model: Note 9
IMEI: 358620090250567
Phone Number: (614) 620-3738

--

**Kevin Durkin**
65 S. Washington Ave #105
Columbus, Ohio 43215
(614) 323-0316 (cell)

*[Handwritten note:]* I don't know why Durkin now lies claiming he refuse to respond via email 2 me cuz it's 3rd party when I have proof of him responding to me thru email last yr & this yr Durkin is working with the government making my case harder

1

Case No. _____

# Franklin County Municipal Court
## Columbus, Ohio

2020 SEP -1 AM 9: 46

FRANKLIN COUNTY
MUNICIPAL COURT
LORI M TYACK

## THE STATE OF OHIO
## VS.

Cellular Phone(s) belonging to Ricco Maye
Black Cellular Phone IMEI #358620090250567
Phone Numbers: (614) 620-3738

## SEARCH WARRANT

For the purpose of locating, seizing and processing:

Trafficking in Persons O.R.C §2905.32
Trafficking in Drugs    O.R.C §2925.03

Filed _____ 1 day of _____ Sept _____, 20 20

Clerk of the Franklin County Municipal Court

By _____, Deputy Clerk

### Ordered on Affidavit of

Detective Brandon Harmon #151
HTTF
Columbus Division of Police

rev. 2/19

129

1  was prior tips involving Ricco prior to my -- prior to my time
2  on the task force.
3       So, with that, the earlier investigator that was working
4  that case and Whitehall were in communication.
5       So, once the 17th Street search warrant happened, those
6  two had exchanged the property and took it over into CPD
7  custody.
8       When I came on the time task force and then when
9  Mark Young was phasing out of the task force, the other
10 detective, I had then gained control over the property that
11 was in the Columbus Police property room.
12    Q.   And you sought -- you sought and successfully obtained
13 an extraction report from that phone?
14    A.   I got the phone --
15    Q.   Yes.
16    A.   -- and then turned it over to Sam Chappell.
17    Q.   All right.  And did you seek to get a search warrant to
18 give you authority to extract information from them?
19    A.   I don't believe I -- without refreshing my memory, I
20 don't believe it was me that wrote that search warrant.  I
21 believe that it was Agent Chappell.
22    Q.   Okay.  But, ultimately, was a warrant issued?
23    A.   Yes.
24    Q.   All right.  By, obviously, somebody authorized to do
25 that?

Case: 2:20-cr-00203-SDM Doc #: 752 Filed: 05/16/25 Page: 5 of 7  PAGEID #: 4004
Case: 2:20-cr-00203-SDM Doc #: 748 Filed: 04/30/25 Page: 130 of 134  PAGEID #: 3986

130

1   A.   Correct.
2   Q.   All right.  Earlier in the trial, was an ad that was
3   posted on or about December 19th, 2019, by Ms. McCoy, was
4   that -- was that one of the ads that was published?
5   A.   I don't believe we have published an ad for Melanie
6   McCoy.
7        MR. DURKIN:  Okay.  Thank you.  Give me just a moment.
8   Let me -- I'm sure I'll be told I forgot something.  So, Your
9   Honor, if I can just have a moment.
10       THE COURT:  You may, of course.
11       (Pause in proceedings.)
12       MR. DURKIN:  Your Honor, thank you.  I have no further
13  questions of this witness.
14       THE COURT:  Okay.  Thank you.
15     Ms. Hill, redirect?
16       MS. HILL:  Briefly, Your Honor.
17                          - - -
18                   REDIRECT EXAMINATION
19  BY MS. HILL:
20  Q.   There was a little -- one thing I want to clear up just
21  quickly, 'cause on direct, you said that you got all the phones
22  and you gave them to Josh Saltar, right?
23  A.   Yes.
24  Q.   And you just said you gave the phone to Sam.
25  A.   So, Josh Saltar did the cell phone extraction.

Case: 2:20-cr-00203-SDM Doc #: 752 Filed: 05/16/25 Page: 6 of 7 PAGEID #: 4005
Case: 2:20-cr-00203-SDM Doc #: 748 Filed: 04/30/25 Page: 131 of 134 PAGEID #: 3987

131

```
 1    Q.  Okay.
 2    A.  Sam had the phone in ATF custody -- that's where we kept
 3  the phone as evidence.
 4    Q.  Okay.  So, it went to Sam first and then to Josh to get
 5  the extraction and then back to Sam?
 6    A.  Yes.
 7    Q.  Okay.  It's not in your custody.  You are not allowed to
 8  hold -- take care of the phones?
 9    A.  No, I'm not.  Right.
10    Q.  Defense counsel asked you a number of questions about
11  the rat poison and who told you what about who had rat poison
12  and who didn't.
13    A.  Right.
14    Q.  Do you remember who told you that Ashleigh Davis was
15  part of that?  Because you said it wasn't Ashleigh or Nicole
16  Groves or Vincent Morrow.  Do you remember --
17    A.  I said it wasn't Ashleigh or Vincent.  I believe it was
18  Nicole Groves that had originally mentioned that it was
19  supposed to be brought up by Ashleigh and Vincent Morrow to the
20  house.
21    Q.  Okay.  And in regards to this rat poison, defense
22  counsel asked you, you know, what would have happened if
23  Nicole Groves had done something more with the rat poison
24  that was supposed to go to Kevin Pearson.
25        Is Kevin Pearson still alive?
```

[Handwritten annotations: "NO SIR YOU GOT A WARRANT OGRADY"; "MORE lies, HE testify lie At TRIAL & GRAND JURY - I'll show NEXT letter"]

43

1  Q. Where were the phones seized from that you reviewed the
2  extractions for?
3  A. I reviewed the extractions from the Sagamore search
4  warrant. There was a traffic stop that was conducted on Ricco
5  a few months prior to.
6      I reviewed the cell phone extraction from the Riverside
7  Hospital incident that we heard Melanie McCoy's testimony on
8  and then the -- reviewed a phone belonging to Ricco from the
9  North 17th Whitehall search warrant.
10 Q. Very good. Now, you said you reviewed extractions. Did
11 you do the extractions of those devices?
12 A. I did not.
13 Q. Do you know how to do that?
14 A. No.
15 Q. Did you ask someone else to do that to assist you?
16 A. I did.
17 Q. Who was that?
18 A. FBI Special Agent Josh Saltar.
19 Q. And Josh Saltar knows how to do that?
20 A. He does.
21 Q. So, what did you give to FBI Special Agent Josh Saltar?
22 A. The cellular devices.  *U GAVE It DIRECTLY 2 JOSH OR SAM? DUMMY*
23 Q. And did you receive anything back from him?
24 A. His extraction reports.  *LIES*
25 Q. And what did you do with all of that?  *SET UP*