UNITIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**United States of America,**

                    Plaintiff,

                                            Case Number 2:20-CR-203 (1)

vs.

**Ricco Maye,**                                 **Chief Judge Sarah D. Morrison**

                    Defendant.

## Sentencing Memorandum of Defendant Maye

Ricco Maye is submitting this Memorandum to assist the Court in determining a sentence that achieves the purposes outlined in §3553(a).

**Additional Objection to the Restitution findings made after disclosure of the final Presentence Report**

The Probation Officer's Addendum notes a new claim for restitution against Defendant Maye to M.M. in the amount of $156,000 from M.M. Mr. Maye objects to this new claim for the reasons set forth below in Objection No 2.

## Objection No. 1: Factual Objections

Sentencing facts must have a minimal indicium of reliability. *United States v. Silverman,* 976 F.2d 1502, 1512-13 (6th Cir. 1992).

Defendant Maye maintains that the following findings are not supported by a minimal indicium of reliability:

**Paragraph 48**: *"Agents also discovered that Maye's drug trafficking organization incorporated the commercial sex trafficking of numerous women by*

1

*force, fraud, and coercion throughout Columbus from 2018 through November 2020."*

**Paragraph 49**: *"Investigators learned that Ricco Maye was the leader of an organization engaged in various types of criminal activity, including drug trafficking, sex trafficking, and mail and wire fraud. Maye utilized threats, violence, and manipulation of drug dependent individuals in his criminal organization to carry out his criminal schemes. He fostered an environment within this conspiracy that pitted members against one another. Some co-conspirators were trusted or valued more than others, but none of them held any authority over the other. "*

**The entirety of paragraphs 50 through 63 and paragraph 65**.

**Paragraph 66**: *"It should be noted that even though these residences were in the names of others, all activities conducted at the locations were at the direction of Maye "*

**The entirety of paragraphs 67 through 69**.

**Paragraph 70**: The defendant objects to the drug amounts in the chart of this paragraph being referred to as a drug seizure.

**The entirety of paragraphs 71 through 77**, specifically related to the Sex Trafficking Conspiracy.

**Paragraph 78**: *"In addition to drug and sex trafficking, Maye directed others to fraudulently apply for and obtain funds from the Pandemic Unemployment Assistance (PUA) programs in Ohio and Michigan. "*

**The entirety of paragraph 81**.

**Paragraphs 97 through 105** as Mr. Maye maintains he prepared his defense against a corrupt government conspiracy that produced false testimony used to obtain his Indictment and conviction at trial.

**The entirety of paragraph 301**.

The Government's responds that these factual findings are supported by evidence introduced at trial. Defendant Maye met his burden to contest these issues with his testimony at trial and his post-verdict statements. As with most trials, the witnesses did not agree as to all the facts objected to by the Defendant. Suggesting that all the evidence introduced at trial was "relied upon by the jury that returned guilty verdicts on all charges" is merely speculation about secret deliberations. Defendant Maye will testify at the Sentencing Hearing and continue to challenge these findings. He urges this Court at sentencing to engage in factfinding of its own and determine whether each of these findings are supported by reliable evidence.

**Additional Factual Objections made by Ricco Maye:**

**Mr. Maye denies using the alias or nickname of "Roscoe."** Defendant Maye maintains that this was a nickname that his cousin (Defendant Morrow) used since childhood. Under these circumstances, a nickname is not the same as an alias.

**Mr. Maye denies that 2836 Linview Avenue in Columbus, Ohio, has ever been his legal address.** Defendant Maye urges this Court to resolve this objection based on the reliable evidence presented (1) at trial, (2) in his post-verdict statements, and (3) at his Sentencing Hearing.

**Mr. Maye objects to the guilty verdicts and facts outlined in the final presentence report regarding fraudulently receiving Pandemic Unemployment Assistance (PUA); participation in witness tampering; participation in commercial sex trafficking; participation in a drug transaction that resulted in the death of M.B.; the drug quantities**

3

**attributed to him; and perpetuating acts of violence against various co-conspirators and victims**. Defendant Maye urges this Court to resolve these factual objections based on the reliable evidence presented (1) at trial, (2) in his post-verdict statements, and (3) at his Sentencing Hearing.

## Objection No. 2: Restitution

The Trafficking Victims Protection Act of 2000 contains a statute mandating this restitution in 18 U.S.C. Section 1593. Defendant Maye maintains, however, that Defendant Maye also argues that he did not engage in Sex Trafficking by Force, Fraud, or Coercion, so he should not be ordered to pay restitution to I.E. M.M. and D.F.

18 U.S.C. Section 1593(b)(1) provides, in relevant part, that the order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection.

Section 1593(b)(3) provides, in relevant part, that, as used in this subsection, the term "full amount of the victim's losses" has the same meaning as provided in section 2259(c)(2) and shall in addition include the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.).

Section 2259(c)(2) provides, in relevant part, that for purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, including -

    **(A)** medical services relating to physical, psychiatric, or psychological care;
    **(B)** physical and occupational therapy or rehabilitation;
    **(C)** necessary transportation, temporary housing, and child care expenses;
    **(D)** lost income;
    **(E)** reasonable attorneys' fees, as well as other costs incurred; and
    **(F)** any other relevant losses incurred by the victim.

Defendant Maye objects to **paragraphs 82 through 93**, and **paragraph 289** of the

presentence report as to finding that he owes restitution in an amount that now totals $629,393.10.

Mr. Maye is not challenging the amount of restitution proposed for the family of M.B. He does object to jointly owing restitution to the family of M.B. because he was not responsible for M.B.'s death.

Mr. Maye is challenging the restitution calculations for I.E. ($104,000), D.F. ($260,000) and M.M. ($156,000). He argues that the PSR lacks sufficiently reliable proof of the women's incomes, and that the Probation Office merely estimated the amount without sufficient support. The Defendant concedes that the amount of restitution need not "be proven with exactitude." *In re Sealed Case,* 702 F.3d 59, 66, 403 U.S. App. D.C. 194 (D.C. Cir. 2012). Courts have held that determining the dollar amount of a victim's losses "will often be difficult" and "such a determination will inevitably involve some degree of approximation [.] *Id*. Thus, estimates are permitted as long as there exists some reasonable and reliable evidence of the *victims'* losses. *United States v. Williams,* 5 F.4th 1295, 1305 (11th Cir. 2021).

Where the evidence of loss is based solely on the recollection of each woman, the Court, acting as the fact finder, should be guided by the same instructions given to juries with respect to judging credibility of I.E., D.F and M.M.

CREDIBILITY OF WITNESSES      *6th Cir. Pattern Jury Instructions, Section 1.07*

IMPEACHMENT OF A WITNESS OTHER THAN DEFENDANT BY PRIOR CONVICTION
*6th Cir. Pattern Jury Instructions, Section 7.05B*

TESTIMONY OF AN ADDICT-INFORMANT UNDER GRANT OF IMMUNITY OR REDUCED CRIMINAL LIABILITY      *6th Cir. Pattern Jury Instructions, Section 7.06B*

TESTIMONY OF A WITNESS UNDER GRANT OF IMMUNITY OR REDUCED CRIMINAL LIABILITY    *6th Cir. Pattern Jury Instructions, Section 7.07*

TESTIMONY OF AN ACCOMPLICE      *6th Cir. Pattern Jury Instructions, Section 7.08*

## Restitution calculation for I.E.

The support for I.E.'s claim for $104,000 is the following sentence: "*I.E. indicated that she earned at least $2,000 per week through the calendar year of 2019 for the defendant*." **PAGEID #4097** ($2,000 for 52 weeks**)**. I.E.'s estimate is not credible. The record does not establish that I.E. was Mr. Maye's victim for every week of year 2019 nor does it establish earnings of at least $2,000 per week. I.E. claim does not account for periods she was not around Defendant Maye in 2019.

**At trial I.E. testified that:**

She started using crack cocaine at the age of 16 and was a crack addict by the age of 18. **PAGEID #3776**.

"Crack just wasn't doing it for me anymore, and so I started to experiment with other drugs, and that [fentanyl] was one of them." **PAGEID #3777**.

She reconnected with Ricco May in the 2018-2019 period. **PAGEID #3778**.

I.E. testified, however, that she was living most of the 2018-2019 with Keyana on Fern. **PAGEID #3775-6**.

Fentanyl was something she had to have every day. "*I couldn't live without it*." **PAGEID #3780**.

She was getting fentanyl from people other than the defendant, although "[n]*ot at first*." **PAGEID #3781**.

She couldn't remember if she was working when she first started buying drugs from the defendant, but that she had money to pay for the drugs "*at first*.". **PAGEID #3782**.

She shoplifted to pay for drugs before and during 2018-9. **PAGEID #3782-3**, **PAGEID #3840**. The right to restitution belongs to the vendors she stole from.

Her criminal record includes receiving stolen property and burglary. **PAGEID #3783-4**.

At some point her addiction was paid for by sex rather than by theft. **PAGEID #3784**.

When she was "*escorting*," she was addicted bad. "*I needed it to stay alive*." **PAGEID #3794**.

I can't really tell you a number [of dates] 'cause there were so many. **PAGEID #3797.**

Sometimes, every single dollar went to Ricco. "[E]*very day was different*." **PAGEID #3798**.

      She helped other people get drugs from another dealer so that she could also obtain dope from that transaction. **PAGEID #3802**. I.E.'s payment was in-kind not cash and should be part of the calculation for her restitution.

      She held drugs to be sold for the Defendant. **PAGEID #3807**.

      There were periods of time that she was not around Ricco Maye. **PAGEID #3835**.

      She stopped going back to the defendant when she went to jail at the end of 2019. **PAGEID #3836**.

      She used cocaine in 2022-'23 but has been "*clean for a year now. Two years, yeah, a year and – like a year*." **PAGEID #3837**.

      She bought drugs from other dealers after she reconnected with the Defendant. **PAGEID #3839-40**.

      She lied to obtain drugs and money because she was an addict. **PAGEID #3843-4.**

      I.E. participated in the sex trafficking conspiracy and drug trafficking conspiracy. **PAGEID #3853-4.**

## Restitution calculation for D.F.

The support for D.F.'s claim for $260,000 is the following: D.F. informed that a typical date cost between $200 to $250. On average, she completed five to six per night and worked at least five nights per week at Maye's direction. She did not receive any of the money she earned from the prostitution activities. **#4052, at paragraphs 92-3.** D.F.'s claim is based on her assertion that she earned at least $5,000 per week from December 2018 until the beginning of 2020 for Maye and that as a result, Defendant Maye should pay $260,000 restitution to D.F. **PAGEID #4097** ($5,000 for 52 weeks**)**. D.F.'s estimate is not credible. The record does not establish that D.F. was Mr. Maye's victim for every week of year 2019 nor does it establish earnings of at least $5,000 per week. D.F.'s. claim does not account for periods that she stopped dealing with the Defendant during 2019 or was participating in in-house drug rehabilitation.

**As to D.F.'s trial testimony Government counsel noted that:**

"*Do you remember - I know we've had a rough time with dates*." **PAGEID #3442**.

**At trial D.F. testified that:**

In her 20's, she abused cocaine, alcohol and Molly "*and then as I got older, in my late 20's, I started using crack and heroin. And then it went to fentanyl*." **PAGEID #3418**.

She did not know when her use of "*fentanyl came into play*." **PAGEID #3419**.

As to when she met Defendant Maye, [i]t *was, like, between -- maybe end of 2017*." **PAGEID #3421**.

Because she was not working, D.F. paid Defendant Maye for drugs by giving him rides to places "*to drop off drugs and stuff*." **PAGEID #3424, #3441-2**.

She was convicted of theft offenses for stealing to support her addiction. **PAGEID #3425**.

She committed mail and wire fraud. **PAGEID #3425**.

She could not recall even the year she was arrested for mail and wire fraud. "*Was it – I don't know. Like, 2020 or 2021. I don't know.*" **PAGEID #3425-6**. Danielle Ferguson was arrested on October 4, 2021 (**2:20 CR 203**).

D.F. was required to enter a drug rehabilitation program as a condition of pre-trial release. **PAGEID #3426**.

D.F. violated her conditions of release by continuing to use drugs. **PAGEID #3426**.

D.F. agreed to testify as a condition of her plea agreement for mail and wire fraud but stated that she would not like the Government to make some promises about what sentence she was going to get. **PAGEID #3427-8**.

D.F. was using fentanyl for "*just a stronger high, like, a stronger nod, which is, like, a falling asleep-type feeling.*" **PAGEID #3429, #3478**.

8

D.F. agreed that if a person was nodding off, she wouldn't expect them to remember what she said to them. **PAGEID #3480**.

D.F. agreed that being dope sick "*was a real strain on her ability to communicate or remember things*". **PAGEID #3480**.

D.F. would stay up for days without sleep when she used crack cocaine. **PAGEID #3429, #3478**.

D.F. stole fentanyl and crack. **PAGEID #3432-3.**

D.F. helped distribute crack and fentanyl daily and brought cocaine to Ohio from Arizona. **PAGEID #3434, 3442-3**.

Although D.F. is now asserting that the typical date cost between $200 to $250, at trial D.F. testified that the cost of a prostitution session was "*between $80 and $40*." **PAGEID #3455**.

D.F. filed a fraud complaint. "*I told them that my stuff was stolen, so it* [the PUA money] *could come back to me*." **PAGEID #3466**. D.F. could not recall how many months she received PUA benefits after Defendant Maye was arrested and detained prior to trial [November 18, 2020]. **PAGEID #3485-6** D.F. admitted that she told the Government that "*I was so high at that point, I don't remember when I stopped get it* [the PUA money]." **PAGEID #3486**.

D.F. used the PUA money "*somewhere else*" after Defendant Maye was arrested." **PAGEID #3466**.

D.F. could not recall when Defendant Maye was arrested. **PAGEID #3467**.

D.F. used "*a lot*" of money from law enforcement and from a social service agency to buy drugs. **PAGEID #3468**.

D.F. illegally sold food stamps to buy drugs before she met Defendant Maye. **PAGEID #3473-4**.

D.F. agreed that the period of her drug addiction "*was a bad time in terms of memory*". **PAGEID #3479**.

D.F. could not remember the process for weighing drugs for sale because "[i]*t was a – like, a long time ago.*" **PAGEID #3489-90**.

D.F. could not remember the names of the drug dealers she purchased drugs from except for Defendant Maye. **PAGEID #3504**.

**Restitution calculation for M.M.**

The support for M.M.'s claim for $156,000 is the following: An additional amount of restitution request was made by victim, M.M., after final disclosure. She earned at least $3,000 per week for Ricco Maye through the year 2019 and as a result, Mr. Maye should pay a total of $156,000 to M.M. **PAGEID #4097** ($3,000 for 52 weeks**)**. M.M.'s estimate is not credible. The record does not establish that M.M. was Mr. Maye's victim for every week of year 2019 nor does it establish earnings of at least $3,000 per week. M.M.'s. claim does not account for periods that she stopped dealing with the Defendant in 2019. M.M.'s. claim does not account for the fact that M.M. was a victim of sex trafficking by Marcus Carmon and Bradley Powell during the entirety of 2019. **PAGEID #3976**. M.M.'s. claim also does not account for the periods when she was incarcerated. In determining whether M.M.'s estimate is reliable, the Court should consider her lengthy criminal record, her long-standing drug addiction, the impact of her drug use on her

memory, her willingness to lie to serve her interests, and the Government's decision to withdraw her from the jury's consideration as a victim of sex trafficking by Defendant Maye.

**At trial M.M. testified that:**

She was addicted to crack cocaine for 15 years and did not stop using crack until she went to prison in 2022. **PAGEID #3650, #3653-4**.

She conceded that the use of crack cocaine impacted her memory. "*I was just so high so much. I don't remember a lot.*" **PAGEID #3654-5**.

She made money by driving Defendant Maye around and by "selling drugs." **PAGEID #3655**.

She was buying crack from people other than Defendant Maye. **PAGEID #3660**.

M.M. claimed that she was around Defendant Maye "*a lot so I was really not away from him, but wherever*" **PAGEID #3660**.

M.M. also claimed that she was at homes where she observed Defendant Maye with "*a lot of other women and other guys*." **PAGEID #3661**.

I.E., however, could not identify M.M's photo. **PAGEID #3841**.

Most of the Government's witnesses did not recognize M.M.'s photograph.

M.M. sent the Court a notarized document in which she lied. **PAGEID #3666**.

M.M. spent "a lot of time in jail" in the years leading up to 2020. **PAGEID #3666**.

M.M. admitted that she was not with Ricco every day because there's long stretches, in fact, where you were actually spending time in jail. **PAGEID #3667**.

M.M. falsely claimed that Defense Investigator Gregg "*wanted me to lie about the situation.*" **PAGEID #3676**.

M.M. admitted that she repeatedly violated conditions for her release imposed in state court. **PAGEID #3690**.

## Objection No. 3 – Acceptance of Responsibility

Defendant Maye accepted responsibility for his criminal conduct during his trial testimony and denied responsibility for the crimes he did not commit.

## Objection No. 4 – Specific Sentencing Guideline Characteristics

**Count Group 1 (Distribution of Controlled Substance Resulting in Death or Serious Bodily Injury)**

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that he possessed a firearm recovered from the Linview Avenue search by law enforcement.

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that he directed the use of violence.

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that he maintained premises for the purpose of manufacturing or distributing a controlled substance.

Defendant Maye conceded during his trial testimony that he conspired to tamper witnesses in federal court. **PAGEID #4288-9**.

Defendant Maye maintains that the record fails to establish with sufficient reliable

12

evidence that he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

**Count Group 2 (I.E.)**

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that he held a managerial or supervisory role within the sex trafficking conspiracy.

Defendant Maye conceded during his trial testimony that he obstructed a sex trafficking investigation. **PAGEID #4288**.

**Count Group 3 (P.R.)**

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that he held a managerial or supervisory role within the sex trafficking conspiracy.

Defendant Maye conceded during his trial testimony that he obstructed a sex trafficking investigation. **PAGEID #4288**.

**Count Group 4 (M.M.)**

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that M.M. was the victim of the Sex Trafficking Conspiracy set forth in Count 11. M.M. was removed from Count 11 from the jury's consideration before the start of their deliberations.

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence he held a managerial or supervisory role within the sex trafficking conspiracy that victimized M.M. Defendant Maye maintains that M.M. was a sex trafficking victim of Marcus Carmon and Bradley Powell. *State of Ohio, vs Marcus Carmon*, (20-CR-3948, Franklin County Court of Common Pleas).

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that attempted to obstruct justice in the sex trafficking case of Marcus Carmon and Bradley Powell.

**Count Group 5 (D.F.)**

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that D.F. was the victim of the Sex Trafficking Conspiracy set forth in Count 11.

**Count Group 6 (Wire and Mail Fraud)**

Defendant Maye conceded during his trial testimony that he participated in the wire and mail fraud conspiracy alleged in Count 12. **PAGEID #4288**.

Defendant Maye maintains that the amount of loss reasonably attributable to his criminal conduct was $43,278 (6 levels vs. 8 levels).

Defendant Maye maintains that the record fails to establish with sufficient reliable evidence that he was an organizer or leader of the PUA conspiracy and involved five or more participants or was otherwise extensive.

## Objection No. 5 - Ability to Pay a Fine

Defendant Maye is objecting to the finding in the final PSR that "*absent evidence to the contrary, it appears the defendant has the ability to pay a fine in addition to restitution in this matter*." **Paragraph 254**. Defendant Maye completed and signed a financial affidavit following his arrest. This Court then determined that Ricco Maye was indigent and appointed him counsel at public expense. Defendant has been detained since his arrest in 2020 and has not received any money for work performed during that detention. Mr. Maye has repeatedly asserted his indigency since that time and has received investigative services and transcripts at public expense. Mr. Maye will offer testimony as to financial status at his sentencing hearing.

## Defendant Maye's Objection No. 6 - Restitution

Please see Objection #2 by defense counsel.

## Defendant Maye's Objection No. 7 - Guideline Objections

**Guideline Objections to Count Group 1**

Defendant Maye is challenging the chart summarizing the jury findings related to the drug quantities throughout the drug trafficking conspiracy in Paragraph 70. The Jury made no finding as to drug quantities in Counts 1 through 5. **PAGEID #2890 - #2894, #2897**.

As to Count 8, the Jury made a finding only that this offense involved 500 grams or more of cocaine, not 1,000 grams. **PAGEID #2898**.

As to Count 9, the Jury made a finding only that this offense involved 40 grams or more of fentanyl. **PAGEID #2900**.

As to Count 10, the Jury made a finding only that this offense involved 5 grams or more methamphetamine. **PAGEID #2902**.

This Court is obligated to determine an Offense Level and Criminal History Category for Defendant Maye before weighing the Section 3553 factors and imposing a sentence. Counsel for Defendant Maye submit that this Court is not required to address drug quantities that were not used to determine Defendant Maye's Base Offense Level. It is not necessary that the Court determine how much, in any drugs were distributed by Ricco Maye to Vincent Morrow, Jacob Capan, D.F., M.M., P.R. Diamere Byrd, Kevin Pearson, Arrika Anthony, Nasuum Ford, Jasmine Weather, Nicole

15

Groves, Victor Blake, Shaniqua Wright, Rashaad Justice, people acting as confidential informant, or buyers acting on behalf of law enforcement.  It is also not necessary that the Court determine how much, if any, drugs were distributed by Ricco Maye to "*street walkers, the petty thieves, the panhandlers, people with not a lot of money that would get overlooked by a typical drug dealer.*" **PAGEID #4290**.

Counsel for Defendant Maye submit that the Court does not need to resolve the issue of drug quantities in this case because Counts 1 through 10 and 14 have been grouped together for purposes of determining an offense level pursuant to U.S.S.G. § 3Dl.2(d).  The Base Offense Level is 43 because the jury found Defendant Maye guilty of participating in the but-for cause of M.B.'s death. No matter the drug quantities, the Base Offense Level cannot be higher or lower. Unless Defendant Maye's Count 7 conviction is vacated, this Court need not ever address the issue of drug quantities.

**Objection No. 7 -  Guideline Objections to Count Group 4 (M.M.)**

Defendant Maye argues that he: (1) did not participate in a sex trafficking conspiracy and that have any role in the sex trafficking committed by Marcus Carmen and Bradley Powell.

After M.M. and Case Agent Harmon testified, the Government withdrew the issue of whether M.M. was the victim of a sex trafficking conspiracy from the jury's consideration.

Since the trial, M.M. has allegedly made recorded statements suggesting that the content of her testimony was false and the result of coercion employed by agents for the Government.

**Objection No. 7 -  Guideline Objections to Count Group 5 (D.F.)**

Defendant Maye argues that he did not participate in a sex trafficking conspiracy and did not act in a supervisory or managerial role in a sex trafficking conspiracy.

**Objection No. 7 -  Guideline Objections to Count Group 6 (Wire Fraud Conspiracy)**

Defendant Maye maintains that he is not responsible for the criminal conduct of the individuals who committed wire fraud.

## Defendant Maye's Objection No. 8 - Criminal History

Defendant Maye maintains that he should be assigned six criminal history points rather than seven.

The Paragraph 202 offense should not have resulted in a criminal history point. The Government argues that a conviction for Criminal Damaging or Endangering is not one the enumerated offenses to be excluded from being in U.S.S.G. § 4A1.2(c)(l) or (2). The position of the United States Probation Office is that 'a conviction of Criminal Damaging or Endangering is also not specified in the table found at U.S.S.G. § 4A1.2(c)." Defendant Maye responds that the advisory Guidelines require further analysis. Application Note 12 for U.S.S.G. § 4A1.2(c) provides, in relevant part, that in determining whether an unlisted offense is similar to an offense listed in subsection (c)(l) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

The Court should sustain Defendant Maye's objection based on the approach outlined in Application Note 12.

**Ricco's History and Characteristics**

No child should experience what is described in Paragraphs 227 -232. The horrors described here are the result of failures by Ricco's family and by society.

**The need to protect the public from further crimes of the Defendant**

This issue is preempted by the mandatory life sentence required by Defendant Maye's conviction on Count 7.

**The need to avoid unwarranted sentence disparities between defendants with similar records found guilty of similar conduct.**

This issue is also preempted by the mandatory life sentence required by Defendant Maye's conviction on Count 7.

**The need to provide Ricco with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The Court should order the Bureau of Prisons to address the mental health findings made by Maryhaven and by Dr. Pawlarczyk. PSR, at paragraphs 241 - 243.

Respectfully submitted,

*s/Keith Yeazel*
Keith Yeazel (0041274)
90 South High Street
Columbus, Ohio 43206
(614) 885-2900
keithyeazel@gmail.com

*s/Kevin Durkin*
**Kevin Durkin** (0002047)
4020 Legend
Columbus, OH 43230
kd1017@aol.com
(614) 323-0316

Attorneys for Ricco Maye

## Certificate of Service

The undersigned hereby certifies that on September 22, 2025, the foregoing Sentencing Memorandum was electronically filed with the Clerk of Courts in CM/ECF system, which will distribute the notice to all parties and counsel of record.

*s/Kevin Durkin*
**Kevin Durkin** (0002047)
