UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　:　　　　Case No: 2:20-cr-203(1)
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
RICCO L. MAYE　　　　　　　　　　:　　　　JUDGE SARAH D. MORRISON

## SENTENCING MEMORANDUM OF THE UNITED STATES

A trial jury convicted Defendant Ricco L. Maye of causing the death of an innocent 33-year-old man through his rampant and ruthless peddling of dangerous drugs. Because this was not the defendant's first foray into (and conviction for) selling drugs, the law dictates that he will be imprisoned for the remainder of his life. Considering more than the legally mandated sentence, the defendant's actions toward the drug overdose victim, the drug addicts who worked for him, and the women who sold their bodies to benefit him establish his astounding capacity for cruelty and violence. Likewise, his actions during the pendency of this case show his utter lack of remorse for the devastation he has caused.  As such, a life sentence would be appropriate even if it were not mandatory.

## BACKGROUND

The defendant was initially arrested in November of 2020, pursuant to an Indictment that charged him with several drug trafficking crimes. Approximately one year later, after significant additional investigation into all the defendant's various and ongoing criminal activities, the Grand Jury returned a 13-count Third Superseding Indictment that charged the defendant and ten of his co-conspirators with distribution of controlled substances (Counts One through Three and Five), possessing controlled substances with intent to distribute (Counts Four and Eight through

Ten), a drug trafficking conspiracy (Count Six), distributing controlled substances that resulted in death (Count Seven), a sex trafficking conspiracy (Count 11), a wire/mail fraud conspiracy (Count 12), obstruction (Count 11), and a witness tampering conspiracy (Count 13). (Doc. # 212, Third Superseding Indictment). Over the course of the next three years, all co-defendants in the case other than Maye entered guilty pleas to various of the charged offenses.

During those three years, the defendant and the government litigated various pre-trial issues. For example, the Court held at least two hearings on the defendant's motions to suppress evidence, one of which involved the defendant testifying on his own behalf.  (Doc. # 341, Minute Entry; Doc. # 554, Suppression Tr.) The Court also regularly addressed the government's motions and notices regarding the defendant's persistent attempts to influence potential witnesses, despite the Court's order that he have no phone contact with anyone other than his attorneys. (Doc. # 330, Sealed Order.) In the final months leading up to trial, the government also filed an Information pursuant to 21 U.S.C. § 851, providing notice to the Court and the defendant of the increased penalties that would apply to any conviction on Counts One through Ten due to the defendant's prior conviction for an offense that qualified as both a serious drug felony and a felony drug offense. (Doc. # 557, Information.)

Trial commenced on October 31, 2024. During the ensuing three weeks, the government called approximately 50 witnesses, which included eight of the defendant's co-defendants, an unindicted co-conspirator, victims of his sex trafficking offense, and numerous law enforcement officers and laboratory chemists. The defendant again testified on his own behalf, admitting to most of the crimes charged in the Third Superseding Indictment, including Count Four, which he had adamantly denied during his sworn testimony at the suppression hearing. (Doc. # 768, Maye Trial Tr. at 4; Doc. # 554, Supp. Tr. at 97-99.) However, the defendant denied any involvement

2

in distributing the drugs that led to M.B.'s overdose death (Count Seven) and claimed that –

although he did physically assault many of his female co-conspirators – he had never put his

hand on the sex trafficking victims for any reason. (Doc. # 768, Maye Trial Tr. at 26-29; 59-60.)

After hearing the testimony of the government's witnesses and of the defendant, the jury

returned guilty verdicts against the defendant on all 13 counts and found that the drug quantities

involved in the Count Six drug conspiracy were: 400 or more grams of fentanyl; 280 grams or

more of cocaine base; 500 grams or more of cocaine; and five grams or more of

methamphetamine. (Doc. # 648, Verdict.) The jury also made determinations regarding the drug

amounts involved in Counts Eight through Ten, specifically: 500 grams or more of cocaine

(Count Eight); 40 grams or more of fentanyl (Count Nine); and five grams or more of

methamphetamine (Count 10). (*Id.*)

The Pre-Sentence Investigation Report process has been ongoing since the defendant's

conviction in November 2024. Early on in that process, the Court issued an important ruling

related to sentencing issues, finding that the sentencing enhancements outlined in the

government's § 851 notice are applicable due to the defendant's prior conviction. (Doc. # 724,

Order.) The defendant therefore faces a statutorily mandated sentence of life with no eligibility

for probation, suspension, or parole based on his conviction for Count Seven. *See* 21 U.S.C. §

841(b)(1)(C).   The guidelines calculated in the Presentence Investigation Report (PSR) are in

accord with this mandatory sentence, finding that the defendant's guideline range is life, based

on a total offense level of 43[1] and a criminal history category IV.

---

[1] The defendant's final Combined Adjusted Offense Level is 55. PSR ¶ 182. However, because the
guideline sentencing table is capped at offense level 43, the defendant's Total Offense Level is 43 with a
corresponding sentencing guideline range of lifetime imprisonment.

Defendant's counsel filed numerous generic objections to the Initial PSR and the guideline calculations contained therein.  Those objections, along with the government's responses, were provided to the Probation Officer prior to the filing of the Final PSR and are included as attachments thereto.  Subsequent to the release of the final PSR, the defendant submitted his own objections to numerous factual and guideline calculation provisions of the PSR. In addition to disagreeing with the jury verdict, many of the defendant's objections either mirrored his counsel's objections or otherwise failed to raise a legitimate dispute. However, the government also replied to the defendant's objections. The government hereby incorporates those previously submitted responses to the defense's objections and further summarizes them as follows. The objections to the factual portions of the PSR are refuted by the evidence at trial and the jury's verdicts that are based on that evidence. The defendant has failed to produce or even suggest any facts that contradict the trial evidence and verdict, other than his own self-serving and unsupported statements. His objections to the guideline calculations in the PSR are also based on disagreements with the facts, which were established by testimony and evidence at trial and found sufficient by a jury beyond a reasonable doubt, a much higher standard than applicable at sentencing. All his outstanding objections should be overruled.

## SENTENCING FRAMEWORK AND ANALYSIS OF THE UNITED STATES

While, in this case, the statutory penalties for Count Seven – in conjunction with the defendant's criminal history, as set forth in the aforementioned § 851 Information – mandate the sentence that must be imposed, the sentencing procedures established pursuant to *Booker v. United States*, 543 U.S. 220 (2005) and its progeny must still be followed.  The first step in that process is correctly determining the applicable guideline range. *See Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The Court then must

consider the guideline range along with the factors under 18 U.S.C. § 3553(a) to determine a

sentence that is "sufficient, but not greater than necessary" to meet the statutory goals of

sentencing.  *Rita*, 551 U.S. at 351, 18 U.S.C. § 3553(a).

The considerations involved in the prescribed sentencing process align with the

statutorily mandated sentence in this case.  Life imprisonment is the sentence recommended by

the guidelines, is sufficient but not greater than necessary to meet the goals of sentencing, and

appropriately accounts for the most significant § 3553(a) factors: that is, the defendant's violent

and deadly actions in this case, his lengthy history of violence, and the extreme danger he poses

to the community.

*Calculation of the Sentencing Guidelines*

Despite the defendant's many protestations to the contrary, the guideline calculations

contained in the PSR are correct. The testimony of 50 witnesses (as well as much of the

defendant's own testimony) and the evidence that was introduced during the three-week trial

established facts supporting all the enhancements to which the defendant objects. His guideline

"range" is life.[2]

*Application of the 3553(a) factors*

The defendant's history and the nature of his offenses in this case share a distinctive and

important trait: violence. Unmitigated, indiscriminate, and unrelenting violence is the tool that

the defendant used to maintain control of the people he needed to carry out his many criminal

schemes and finance his criminal lifestyle. Witness after witness after witness at his trial

described instances of the physical assaults they endured at the defendant's hands. While

---

[2] Notably, the base offense level for Count Seven is 43, which results in an advisory guideline range of life before any specific offense characteristics or other enhancements are applied. Thus, even if the Court granted all the defendant's objections to the specific offense characteristics and enhancements under Chapter Three of the guidelines, his guideline-recommended sentence would remain unchanged.

claiming that he only used violence rarely as a "loss prevention" tactic, even the defendant could not dispute that he put his hands on many of the women and men who worked in his criminal organization. (Doc. # 768, Trial Tr. at 59-60.)

Akin to the violence the defendant employed, and the moral deficiency and utter lack of human empathy such violence demonstrates, the defendant's actions related to the death of M.B. also reflect his void of concern for human life. The Court saw the body worn camera videos that showed how urgently the defendant tried to get into M.B.'s apartment. His desperation had nothing to do with concern for M.B.'s life, rather it was an effort to ensure his involvement in the death was not discovered.

The unrepentant violence and callous indifference to the repercussions of his actions is not new for the defendant. His criminal history is replete with convictions related to his violence against the mothers of his children, as well as more than two full PSR pages listing prior arrests that did not lead to convictions, at least half of which were domestic violence or some other form of violent assault. One of those prior arrests was likely the event described by Airrika Anthony, in which the defendant broke her collarbone and bones in her face. The defendant's response to Ms. Anthony's testimony about that assault was to suggest she was lying, despite the fact that her testimony about his violent behavior was eerily similar to almost every other witness that had personally been in his orbit. His response to the testimony about these brutal assaults again demonstrates the defendant'scallous and cavalier attitude about the suffering he has caused and is further reason that the defendant should never be released from prison. He has proven, time and time again, that his interactions with other human beings involve nothing but manipulation and violence, treating others as less than human, less than dogs, and perhaps, less than fleas on

6

dogs. He was incapable of giving mercy to anyone else, using others only to serve his own means, and he deserves no mercy in sentencing.

The government does recognize the horrific violence that the defendant experienced as a child and has sympathy for that child. But sympathy for the defendant cannot wipe out the many years of life-devastating violence and cruel manipulation of addiction and affection he inflicted on so many others. At a certain point, the defendant's actions became his own—his decisions, not just a reflection of the dysfunctional childhood he suffered. His decisions caused numerous tragedies for which he has shown no remorse. That his young life involved violence and trauma does not outweigh the violence and trauma he inflicted on so many.

Wrapped up in this same issue of violence are several other 3553(a) factors. The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and the need to protect the public are primary among them.

The first of these two factors reflects the retributive aspect of sentencing, that is "the need to make the punishment fit the crime, and the need not just to punish but to punish justly." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (*en banc*). The defendant's crimes resulted in the death of a man in his 30's and non-fatal drug overdoses of numerous others.  The defendant's crimes resulted in broken bones, a busted ear drum, and a knocked-out tooth. The defendant's crimes caused women to sell their bodies to strangers for the crumbs of drugs the defendant allowed them to have. Punishment that fits crimes of this nature must be severe. And when the defendant's history shows so little concern or remorse for the impact of his crimes, the punishment should be even more severe.

7

As for protection of the public, in the face of such unwarranted violence the importance of this factor is plain. The defendant has demonstrated—by his actions in this case and by the repeated violence reflected in his criminal history—that he does not care about how much damage he causes to other people's lives. His previous prison sentences have not changed that, and his previous terms of supervision have not changed it. The only thing that can protect others from the physical, mental, and emotional harms that the defendant will invariably cause is prison.

The remaining § 3553(a) factors only further support the foregoing analysis.  As to the available sentences, a life sentence is statutorily mandated. Deviating from that mandate would cause the ultimate unwarranted sentencing disparity, because it would treat the defendant differently than any other person who sold dangerous drugs that caused death after previously being convicted for distributing drugs. The statutory mandate aside, many of the other charges of conviction provide for a sentence up to life, and his guideline range based only on the amount of drugs involved in his convictions would also be life.[3] As the guideline range is the best benchmark for the national disparities that this factor references, *see United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008), under any scenario, a life sentence avoids unwarranted sentencing disparities.

Finally, while the government does support an order of restitution as indicated in the PSR, a life sentence is not at odds with that goal. The defendant has shown no likelihood of obtaining lawful, gainful employment when free in the community such that providing for his

---

[3] Using only the relevant conduct of assorted narcotics, as found by the Probation Officer, would result in an offense level 32 (3,000 to 10,000 kilograms of Converted Drug Weight). With enhancements for possession of a firearm (+2 levels), use of violence (+2), maintaining a premises (+2), witness intimidation (+2), and supervisory role (+4), the defendant's final offense level would be 44 (reduced to 43) and his sentencing guideline "range" would also be life imprisonment.

future release would be beneficial to the many victims of his crimes. Conversely, the Court can structure a restitution order to ensure that a portion of any prison funds the defendant receives while incarcerated goes towards his restitution obligation.

## CONCLUSION

The defendant's actions have caused lives to be lost and numerous women to endure physical and emotional pain from which they may never recover. The devastating repercussions of his actions in this case, the many years of violence that are documented in his criminal history, and his continuing disregard for the harm he has caused all warrant the life sentence that the law requires.

Respectfully submitted,

DOMINICK S. GERACE, II
United States Attorney

s/*Heather A. Hill*
HEATHER A. HILL (0100920)
KEVIN W. KELLEY (0042406)
Assistant United States Attorneys
303 Marconi Boulevard Suite 200
Columbus, Ohio 43215
(614)469-5715
heather.hill@usdoj.gov
kevin.kelley@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice was served this 22nd day of September, 2025, electronically upon all counsel for the defendant.

s/*Heather A. Hill*
HEATHER A. HILL (0100920)